Houston, J.,

announced the decision of the Court.'
The articles of agreement in this case being nothing more than a. private contract inter f artes, without any statutory provision or regulation in regard to it, apparently designed and adopted as a substitution, by arrangement and agreement between the parties, for a formal indenture of apprenticeship under the statute, it should be construed like any other contract in writing between parties, according to its sense and meaning, as the same is to be derived from the terms employed in it and collected from the whole instrument; and it is a well-settled rule of law that. *537 every agreement must have a reasonable construction according to the intent and object of the parties at the time of entering into it, in order to effectuate, rather than to defeat that object and intention. The design and object of the present contract was to have the boy, Richard Jackson, taught the art and trade of coachsmithing, and for this purpose the parties to it, instead of resorting to the usual and better method of binding him as an apprentice according to the forms of the statute, entered into a private and written agreement for the purpose, by which it was covenanted, among other things, by the parties of the first part, that he should stay with the party of the second part and serve him faithfully after the manner of an apprentice, until he should arrive to the age of twenty-one years, being then about sixteen years old; and by the party of the second part that he would teach him, or cause him to be taught, the art and trade before mentioned, and that he would pay the parties of the first part, whilst he remained with him, thirty dollars per annum, for his clothing, and would also allow them for his boarding, washing, and mending (the amount due for the first year, $117, to be retained and paid as provided for in the contract), the sum of two dollars and twenty-five cents per week during the said term of service.' At the time of executing the contract, all the parties were residing in Wilmington as citizens of one and the same place, and sufficiently near and convenient to each other to carry out this part of the agreement on both sides, without serious inconvenience to each other, or any greater expense, perhaps, to the parties of the first part, than the sums above stated. One of the main objects and motives of the defendant in entering into the agreement, probably, was to avoid the necessity of taking the boy into his own family and of assuming that personal care, charge, and control of him, as well as the more stringent and imperative duties and obligations which result from a regular indenture of apprenticeship, and are imposed by it upon the master. As the boy was at that time living in the family of his parents, *538 and the parties were all residing in the city, of Wilmington, the defendant there established in his trade and business of coachmaking or coachsmithing, and the parties of the first part there permanently settled by anticipation for the ensuing five years at least, it is not only fair to presume, under all these circumstances and from the fact that neither party saw proper to insert in the contract any stipulation or covenant in regard to a change of residence, or any change in their relation to each other in this respect in the meanwhile, that it was at that time the expectation and design of both parties, that they would so continue to reside convenient to each other, and that the boy should continue to live in the family of, and be lodged and boarded by his parents, or where they at least might have, without the necessity of removing from the State and changing their residence to another and distant city, at the will and pleasure of the defendant solely, the personal care, supervision, charge, and control over him, and the provision and supply of such necessaries as were stipulated for him in the contract, at the prices stated, during his term of service. It was probably in consideration of these facts and the expectation and understanding just stated, that they agreed to clothe him for the sum of thirty dollars per year, and furnish his board, lodging, washing and mending for the further sum of two dollars and a quarter per week. It was therefore but a reasonable construction of this portion of the contract to conclude that such was the understanding and intention, as well as the expectation of the parties at the time when the agreement was entered into; for it was strongly if not irresistibly implied from the facts and circumstances before referred to. The language of the covenant on this point, when fairly interpreted, also imported the same. It is, that “ the said Waltérs is to allow the parties of the first part for the boarding, washing, and mending, of the said Richard, the sum,” &e. He was then living and lodging in their family, and as no provision is made for the future removal of the defendant or the minor from .the State, or for boarding him elsewhere, the terms *539 naturally imply and must be understood to mean that it was the intention of the parties that he should continue in the family of his parents at the price agreed upon.
Such being the construction to be placed on this part of the agreement, the only part involved in the present controversy, and the covenants alluded to being reciprocal or dependent covenants, and such being the contract, understanding, and arrangement between the parties on this point, it was clearly incompetent for either party to put it óút of the power of the-other, without his consent, to perform his part of the contract in this or any other respect, or to deprive him of any profit, benefit, advantage, or gratification which would or might justly accrue to him from his performance of it; and it was, therefore, not allowable, nor in accordance with the obvious design of the parties, for the defendant, when by his own voluntary act he transferred his place of business beyond the limits of the State, and removed from the city of Wilmington to the city of Baltimore, to insist on removing the minor with him, without the consent of the plaintiff', far away from the society of his family, and beyond their personal care, control, and supervision, to be lodged and boarded among strangers, and to deprive them of whatever benefit, advantage, or gratification might accrue to them from having him to remain with them during his term of service. To have done this would have involved, we think, a clear infraction of the agreement and intention of the parties at the time when the contract was entered into, and that he had no right to insist upon it. And as he had thus, by his own voluntary act and by his removal beyond the limits of the State, without the consent of the plaintiff, put it both out of his own power and out of the power of the parties of the second part to perform their respective covenants and agreement in this respect, judgment must be entered .against him, in favor of the plaintiff, for the sum ascertained by the agreement of the counsel, and submitted in the case stated, with costs, &c.